**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| ANABEL VASQUEZ TEJADA, | * | |
| Petitioner, | * | |
| v. | * | Civ. No. 8:26-cv-952-PX |
| VERNON LIGGINS *et al*., | * | |
| Respondents. | * | |
| | *** | |

**<u>MEMORANDUM ORDER</u>**

Pending is Anabel Vasquez Tejada ("Vasquez Tejada")'s Petition for a Writ of Habeas Corpus in which she seeks immediate release from immigration detention. ECF No. 1. After full briefing and a hearing on the merits, the Petition is granted.

Vasquez Tejada is a citizen of El Salvador who entered the United States in October 2019. ECF No. 1 ¶ 18. In early 2025, an immigration judge ordered her removed to El Salvador and next granted Vasquez Tejada withholding of removal because of her demonstrated fear of persecution in her home country. *Id.* ¶ 19. A month later, Respondents released Vasquez Tejada and placed her in Immigration and Customs Enforcement ("ICE")'s Intensive Supervision Appearance Program. At first, ICE required Vasquez Tejada to check in every three months but eventually changed it to once per month. *Id.* ¶ 20.

Vasquez Tejada never violated her release conditions. Nonetheless, on March 3, 2026, ICE arrested and detained Vasquez Tejada during her routine check-in at the ICE Baltimore Field Office. ECF No. 1 ¶ 21. In a sworn declaration, Vasquez Tejada confirms that ICE officers never told her why they were revoking her release when they took her into custody. Instead, the

officers only told her that they were detaining her because she had an order of removal.  Nor did they give her any opportunity to explain "why [she] shouldn't be detained."  ECF No. 15-1 ¶ 4.

Once in custody, ICE officers took Vasquez Tejada to the ICE Baltimore Hold Room ("Hold Room").  ECF No. 15-1 ¶ 4.  There, Vasquez Tejada expressed her shock and confusion surrounding her detention because she had "done everything right," "won [her] immigration case," and "follow[ed] [ICE's] directions."  *Id.* ¶ 5.  The agents responded that she could say "all that" when she arrived at the detention center, but "not . . . right now."  *Id.*

ICE officers next moved Vasquez Tejada to another room separated from other detainees and connected her to a translator over the phone.  ECF No. 15-1 ¶ 6.  Officers told her she "had to be deported" and gave her a list of countries from which to choose where she could go.  *Id.* ¶ 7.  The officers pressed her to "choose" Guatemala because it is close to El Salvador, so "they kept insisting that [she] agree to go there."  *Id.*  Vasquez Tejada responded that she did not want to go to Guatemala because her family is in the United States, and she has "nothing" in Guatemala.  ICE officers "harshly and forcefully" replied that Guatemala is her "best option" and that she "could either go to Guatemala or some other place, but Guatemala is closest to El Salvador."  *Id.*  ¶¶ 7–8.  Vasquez Tejada, "nervous and frightened," picked Guatemala from the list only because ICE "kept telling [her] to."  *Id.* ¶ 10.

At that point, ICE officers presented documents to Vasquez Tejada and insisted she sign them.  The interpreter, however, added that "no one can force [you] to sign any documents," so Vasquez Tejada refused.  ECF No. 15-1 ¶ 12.  Of the documents in the record concerning Vasquez Tejada's re-detention, none are signed by her.  *See* ECF Nos. 1-4, 1-5, 1-6, 1-9.

Vasquez Tejada remained detained in the Hold Room for several more days.  On March 5, 2026, her counsel went to the Baltimore Field Office in person and formally requested "all

documents" that ICE officials "served on" Vasquez Tejada in connection with her detention. ECF No. 15-3.  Deportation Officer Jean-Francois first told counsel that ICE would not provide the documents.  *Id.* ¶ 4.  But after talking with his "supervisor," Jean-Francois gave counsel five documents, including the Notice of Revocation of Release.  ECF Nos. 1-4, 1-5, 1-6, 1-8, 1-11.

The Notice of Revocation of Release (the "Notice") is a pre-printed form designed to place the detainee on notice as to the reasons for her detention.  ECF No. 1-4.  It specifically allows the ICE authorizing official to indicate whether ICE intends to revoke release under either of two regulatory schemes: 8 C.F.R. § 241.4(*l*) *or* § 241.13(i).  *Id.*  The Notice for Vasquez Tejada indicated that ICE was revoking her pursuant to 8 C.F.R. § 241.13(i).  The Notice also checked the box besides preprinted language which states that Vasquez Tejada's "circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future;" that "ICE is seeking a travel document to effect your expeditious removal to Guatemala;" and that on March 3, 2026, "you will be afforded an informal interview at which you will be given an opportunity to respond to the reasons for this revocation.  You may submit any evidence or information you wish to be reviewed in support of your release."  *Id.* (emphasis added).

However, the Notice was neither presented to Vasquez Tejada on March 3, nor was it signed by any ICE official until the day *after* Vasquez Tejada was taken into custody.  As made plain by the document, Nikita Baker ("Baker") signed the Notice on the evening of March 4, 2026.  ECF No. 1-4 at 2.  Further, Baker purports to have signed as "Acting Field Director" but she did not occupy that position at the time, Vernon Liggins ("Liggins") did. *Id.*  Baker explains, however, that she signed with Liggins' permission and because he was "travel[ing] out of the State" that day.  ECF No. 14-1 at 8 n.4; ECF No. 19.

On March 7, ICE transferred Vasquez Tejada to a detention facility several hundred miles away in Arizona, where she has been held for nearly two months. Respondents are still "working on" getting travel documents to Guatemala but have no timeline as to when those documents may be secured, if ever, for Vasquez Tejada. Hearing Transcript at 26:20–21.[1]

The Petition argues that Vasquez Tejada is entitled to immediate release because the Respondents detained her without following the relevant regulations designed to ensure that she receives a modicum of due process upon her re-detention.[2] Pursuant to the *Accardi* doctrine, "an agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination" if the petitioner can demonstrate "prejudice resulting from the violation." *United States v. Morgan*, 193 F.3d 252, 266–67 (4th Cir. 1999); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Prejudice is "presume[d]" however, where "an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency." *Delgado-Corea v. Immigr. & Naturalization Serv.*, 804 F.2d 261, 263 (4th Cir. 1986).

As a preliminary matter, the Court makes clear that the regulatory section applicable to Vasquez Tejada's detention is 8 C.F.R. § 241.4(*l*), not § 241.13(i) as the Notice states. Section 241.13(i) applies to noncitizens who have been detained beyond the 90-day removal period following a final order of removal. 8 U.S.C. § 1231; 8 C.F.R. § 241.13(i). That is not Petitioner. Respondents agree the Notice was wrong and that the *Accardi* analysis should focus on whether ICE complied with § 241.4(*l*) when revoking Vasquez Tejada's release. Hearing Transcript at 16:10–11 ("The government would concede that [the proper regulation] is 241.4.").

---

[1] "Hearing Transcript" refers to an unofficial transcription of the hearing provided by the official court reporter as a courtesy.

[2] Vasquez Tejada raises several alternative theories of relief which the Court need not address at this time.

4

Respondents also agree that the purpose of § 241.4 is to protect the due process rights associated with a noncitizen's revocation of release.  Hearing Transcript at 16:23–17:3, 19:16–23.  *See also Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2841886, at \*4 (D. Md. Oct. 7, 2025) ("Respondents agreed that these provisions were intended to protect due process rights.").  Specifically, § 241.4(*l*) requires that such revocation must be approved by the District Director, as delegated to the Field Office Director,[3] and only if the Field Office Director concludes that "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." § 241.4(*l*)(2).  The regulation also requires that ICE inform the noncitizen of the reasons for her detention and allow her to be heard upon revocation. *Id.  See also Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2444087, at \*6 (D. Md. Aug. 25, 2025).  In this case, Respondents failed to afford Vasquez Tejada any of the articulated protections.

First, as of March 3, when Vasquez Tejada was detained, Acting Field Office Director Liggins neither signed the Notice nor made the necessary findings to secure her detention.  *Cf. Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 162 (W.D.N.Y. 2025) (finding that "even if" Assistant Field Office Director had proper authority to revoke release, "there is no evidence that [Assistant Field Office Director] made the findings that a district director is required to make *before* revoking [petitioner's] release.").  Respondents also do not cure the defect by having Baker sign the Notice the next day, after Vasquez Tejada's detention commenced.  For one, nothing supports that the Acting Field Office Director can delegate this authority to a lower officer.  And even if Liggins could temporarily delegate such authority, the circumstances

---

[3] Separate regulatory authority confers to the ICE Director the power to delegate this determination to Field Office Directors, but not to lower ranked officers.  *See, e.g., Ceesay*, 781 F. Supp. 3d at 161; *Santamaria Orellana*, 2025 WL 2841886, at \*4.

surrounding this purported delegation are suspect. Although Baker tries to suggest that she signed for Liggins because he was "traveling," Liggins also *was* present on March 3 to sign a related "Warrant of Removal/Deportation" for Vasquez Tejada. ECF No. 14-1 at 8 n.4; ECF No. 14-6. Equally problematic, had Liggins actually signed the Warrant on the 3rd, the Warrant would have been turned over to her counsel with the other documents on the 5th. But it was not. A record riddled with such irregularities simply cannot be given much weight.[4]

Last, even if the Acting Field Office Director had issued the Notice, Vasquez Tejada neither received it nor had an opportunity to "respond to the reasons for revocation stated in the notification" before she was detained. 8 C.F.R. § 241.4(*l*)(1). Instead, ICE took her into custody and then pressed her to pick a country for removal. ECF No. 15-1. When Vasquez Tejada tried to argue for her release, ICE officers told her, "not now," and that she would not be heard until she reaches an ICE detention center. *Id.* ¶ 5. But by then, the decision to detain will have long since passed. This cannot be said to have given Vasquez Tejada any *meaningful* opportunity to be heard.[5]

Accordingly, the Court joins the growing chorus of district courts that have concluded Respondents' failure to follow its own regulations concerning revocation of release violates the *Accardi* doctrine. *See, e.g.*, *Samahn v. Noem et al.*, No. 25-CV-25618, 2026 WL 911290, at *6

---

[4] Baker's declaration on this point further undermines that she in fact authorized Vasquez Tejada's revocation of release. Baker claims that she signed the Notice on March 4, after "determining that revocation of the release was in the public interest and circumstances did not reasonably permit referral of the case to the Executive Associate Commissioner/Executive Associate Director." ECF No. 19 ¶ 3. Yet the Notice itself authorizes re-detention under § 241.13(i), which does not require such a finding. Had Baker actually reviewed the Notice with any care, the erroneous citation to § 241.13(i) would have been evident and presumably would have been changed accordingly.

[5] Nor does the completed "Alien Informal Interview," ECF No. 1-11, alter the analysis. The document is so barebones that the Court cannot infer the interview with Vasquez Tejada, if it happened at all, took place before Respondents decided to detain her. *Id.* The document also suggests that Vasquez Tejada told the interviewing officer nothing other than "Please send me to Guatemala." *Id.* But Vasquez Tejada repeatedly protested removal to Guatemala, explaining she would never agree to go where she had no family or prospects of support. ECF No. 15-1. Because the form raises more questions than answers, it does not reliably reflect that Vasquez Tejada had been given any meaningful opportunity to be heard before Respondents decided to revoke her release.

(S.D. Fla. Apr. 2, 2026); *Ahmed v. Olson*, No. CV 26-89-DLB, 2026 WL 836123, at *5 (E.D. Ky. Mar. 26, 2026); *Sombuoune Virachak* v. *Juan Baltazar et al.*, No. 26-CV-00391-STV, 2026 WL 746285, at *4–5 (D. Colo. Mar. 17, 2026); *Alcivar Lorenzo v. Raycraft*, No. 1:26-CV-77, 2026 WL 369349, at *6 (W.D. Mich. Feb. 10, 2026); *Rodriguez Romero v. Ladwig*, No. CV 25-1106-JWD-EWD, 2026 WL 321437, at *7–8 (M.D. La. Feb. 6, 2026); *Arman Kesheshian v. Kristi Noem et al.*, No. 5:25-CV-03478-MWC-DFM, 2025 WL 4227216, at *5 (C.D. Cal. Dec. 24, 2025); *N.A.L.R. v. Bondi*, No. 4:25-CV-00192-SEB-KMB, 2025 WL 2987239, at *2 (S.D. Ind. Oct. 23, 2025); *K.E.O. v. Woosley*, No. 4:25-CV-74-RGJ, 2025 WL 2553394, at *5 (W.D. Ky. Sept. 4, 2025).  Although, "not every technical failure to comply with policies or procedures violates the Constitution," where the regulations safeguard against unconstitutional deprivations of liberty, they must be followed.  *Santamaria Orellana*, 2025 WL 2841886, at *5.  *See also Ceesay*, 781 F. Supp. 3d at 162; *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *10 (D. Or. Aug. 21, 2025).  They were not.  As a result, Vasquez Tejada was detained without due process for which the remedy is immediate release.

Accordingly, it is this 20th day of April 2026, by the United States District Court for the District of Maryland, hereby **ORDERED** that:

1. Petitioner Anabel Vasquez Tejada's Petition for a Writ of Habeas Corpus, ECF No. 1, is **GRANTED**;

2. Respondents are **DIRECTED** to release Vasquez Tejada on or before **April 21, 2026 at 5:00PM**, under the same conditions in place prior to her March 3, 2026 detention;

3. The parties **SHALL** file a Joint Status Report by **April 23, 2026** to confirm Respondents' compliance with this Order; and

4. The Court shall retain jurisdiction of this matter to enforce compliance with this Order.

_____/s/_____

Paula Xinis
United States District Judge
